*Harlan*, for plaintiffs; *B. & J. Monroe*, for defendants.

STEVENSON, &c.
*vs.*
HUDDLESON.

---

## Stevenson, &c. *vs.* Huddleson.

APPEAL FROM NICHOLAS CIRCUIT.

Chief Justice HISE delivered the opinion of the court.

EJECTMENT.

Case 33.

October 11.

1. The possession of the widow of land of which her husband died seized, is not adverse to that of the heirs of the husband, though a part of the heirs lived with her on the premises.

2. A writing purporting to be a will, and using the terms *devise* and *bequeath*, though acknowledged before the county court clerk, and after the death of the maker proved and recorded as a will—held to be invalid as a deed.

3. Such paper having been admitted to record without restriction, by the county court duly authorized to receive proof of wills, must be regarded as a valid will, and effectual to pass title to lands.

4. A general judgment of the county court admitting a paper to record as a will, is effectual to establish the paper as the will of the testator, and to pass all the estate, real and personal, which it purports to pass.

5. Though a will which purports to pass land does not appear to have been attested by two witnesses, yet if the record of its proof merely states that it was proved, without giving the evidence, the legal presumption is that it was established by proof that it was wholly in the handwriting of the testator. (10 *B. Monroe*, 427; 4 *Bibb*, 439; 2 *A. K. Marshall*, 467, 230.)

Case stated.

On the 6th of November, 1850, Ruth Stevenso n and her husband, Elizabeth Crawford and her hus- band, and Eleanor Hamilton, as lessors of the plain- tiff, filed their declaration and notice in ejectment against David Huddleson, in the Nicholas circuit court, in open court, on the third day of the Novem- ber term 1850, for the purpose of recovering the pos- session of three-sevenths of a tract of land in the county of Nicholas, which belonged to Hans Huddle- son, deceased, at the time of his death. David Hud- dleson, the party in possession of the land, upon whom there was due service on the 6th of Septem- ber, 1850, by delivering to him a copy of the declara- tion and notice, was admitted as defendant by leave of the court at the May term thereof for the year 1851. The usual issue was formed, and at the March term 1852, there was a trial, resulting in a verdict and judgment in favor of the defendant David Hud- dleson.

The lessors of the plaintiff, thereupon moved the court for a new trial, for the reasons following:

Judgment of circuit court, and motion for new trial over- ruled.

1. Because the court had erred in permitting a pa- per, purporting to be the last will and testament of Hans Huddleson to be read as evidence to the jury, and in overruling the plaintiff's motion to exclude it.

2. Because the court erred in instructing the jury imperatively, that upon the evidence in the case they were bound to find for the defendant.

3. Because the verdict of the jury was contrary to law and evidence.

The motion for a new trial was overruled by the court. The lessors of the plaintiff excepted to this and other opinions of the court, delivered in the pro- gress of the case, and have appealed to this court.

Substance of the evidence in the bill of ex- ceptions.

The whole of the evidence given on the trial as set forth in the bill of exceptions shows the following state of case:

1. That the three ladies named, (two of them in con- junction with their husbands,) as lessors of the nomi- nal plaintiff, were the daughters of Hans Huddleson,

deceased, and that defendant, David Huddleson, was his only son, and the brother to the said lessors of the plaintiff.

2. That Hans Huddleson was the owner and had title to the tract of land in controversy, containing 120 or 130 acres, and held both the title and possession of the land for a good many years, and up to the time of his death.

3. That Hans Huddleson died about twenty-one or twenty-two years before the 24th of March, 1852, when this trial took place.

4. That his widow survived him, and was left in possession of the mansion house on the land in contest, at the death of her husband, and she continued in possession of the mansion house and premises until her death, during all which time her son David Huddleson, the defendant, lived with her in the same house; when the widow died does not appear.

5. That after the death of the widow, the defendant continued in the possession of the premises until the commencement of this suit, and since; that ever since his father's death the defendant had lived on the land, part of the time with his mother, and claimed the whole of the land as his own property.

6. That Hans Huddleson, when he died, left seven children, to-wit, six daughters, including the lessors of the plaintiff, and one son, the defendant in the action; that Ruth Stevenson was, at the time of the trial, under forty and over thirty years of age, and that she had intermarried with her husband John Stevenson several years after her father's death; that Elizabeth Crawford was about fifty-two years old, at the time of trial, and had intermarried with her husband John Crawford in the lifetime of her father, and that they were both still living; and that Eleanor Hamilton was, at the time of trial, about fifty years of age, and had intermarried with her husband —— Hamilton, in the lifetime of her father; that her husband died in some six or seven years after the marriage, and that she was still surviving.

STEVENSON, &c.
vs.
HUDDLESON.

U

A paper purporting to be the last will and testament of Hans Huddleson, deceased, was offered as evidence to the jury by the defendant. The plaintiff objected to its being read as evidence. The court overruled the objections, and it was admitted as a part of defendant's proof in the cause. The plaintiff's lessors excepted to this opinion of the court, and the correctness of this opinion, and validity of this paper as a *deed* or as a *will*, and its sufficiency to pass the title to the land in contest to the defendant, is the main question presented for the consideration of this court.

This paper is dated on the 26th of December, 1825, and manifestly purports, upon its face, to be the last will and testament of Hans Huddleson, deceased, and makes a *post mortem* and testamentary disposition of his whole estate, as follows, to-wit: .

Hans Hud-
dleson's will.

"I, Hans Huddleson, of Nicholas county, and state " of Kentucky, considering the uncertainty of this " mortal life, and being of sound mind and memory, " blessed be Almighty God for the same, do make and " publish this my last will and testament, in the man- " ner and form following, that is to say :

" 1st. I give and bequeath to my beloved wife Ruth " Huddleson one-third of my *whole estate*, during her " natural life, and at her death her third of the plan- " tation whereon I now live shall belong to my son " David ; I do also give and bequeath unto my son " David Huddleson the other two-thirds of my whole " estate ; and that my son David shall pay out of my " estate unto my daughter Betsy Crawford, for her " part of my estate, $100, within *two years* after my " decease ; and also unto my daughter Eleanor Hamil- " ton $100, in like manner as my daughter Betsey ; al- " so to my daughter Nancy McNary $50, in manner " as my two other named daughters ; also to my " daughter Mary Ann Taylor $50, in like manner ; " also to my daughter Matilda Huddleson $100, in " like manner ; also to my daughter Ruth Huddleson " $120, in like manner. And last, my son David

" must take care of my two bound boys, James Ware
" and John Myers, and give them schooling, such
" schooling as is common for farmers ; and if the said
" boys stay with my son, or in my family till they ar-
" rive to the age of twenty-one, my son David shall
" give each two suits of clothes, and a horse, saddle,
" and bridle.

" In witness whereof, I have hereunto set my hand
" and seal this 26th day of December, in the year of
" our Lord, 1825.          Hans Huddleson, *seal.*"

Upon this original paper are written the following
certificates :

" *Nicholas county,* sct :

" I, Horace Metcalfe, clerk of the Nicholas county
" court, do certify that this instrument of writing was
" this day *produced* to me in my office, *acknowledged,*
" and *ordered* to be recorded, which is done according-
" ly, given under my hand this 26th day of December,
" 1825.          Horace Metcalfe, c. n. c. c."

" Nicholas County Court, sct : November term,
" 1830.  This instrument in writing, purporting to be
" the last will and testament of Hans Huddleson, de-
" ceased, was this day produced in court, and on hear-
" ing the evidence of Wm. B. Casey and Hiram Met-
" calfe, and the court being sufficiently advised there-
" upon, do consider and order that the said will be
" confirmed, established, and recorded.  And there
" being no executor named in said will, on motion of
" Ruth Huddleson, widow and relict of said decedent,
" administration with the will annexed is granted her
" on said estate ; who thereupon came into court, and
" made oath thereto, and together with Milton Brown
" and Alexander Huddleson as her securities, entered
" into and acknowledged bond in the penalty of
" $2,000, conditioned according to law, and thereupon
" certificate is granted her, &c.      Attest, John G.
" Parks, c. n. c. c."

It appears that there were and are no subscribing
witnesses to this paper at all; and it further appears,
from the deposition of Wm. B. Casey, that he, the wit-

STEVENSON, &c.
vs.
HUDDLESON.

ness himself, wrote the whole of this will and the name of the testator thereto ; that it was wholly in the hand-writing of the witness, including the signature ; but that it was written at the request and according to the directions of the deceased, and that he was at the time of sound mind and memory and fully capable of making his will. The defendant's counsel except-ed to this deposition, on the ground that the matter contained in it was not legal or competent evidence in this case ; but the court overruled the objection and permitted the deposition to be read to the jury, and defendant's counsel excepts to this opinion of the court. The plaintiff's counsel offered in evidence the inventory and appraisement of the personal es-tate of Hans Huddleson, deceased, amounting in value to $1,101 ; and further, offered to prove that the personal property thus listed and valued, as shown by the appraisement returned, belonged to the de-ceased at the date of the will and at the time of his death. The defendant's counsel objected to this evi-dence. The court sustained the objection, and refus-ed to permit such proof to go to the jury, and plain-tiff's attorney excepted to this opinion of the court. Upon the state of case, as thus presented, the court, on motion of defendant's attorney, instructed the ju-ry "that they must find for the defendant."

Questions pre-sented by the record for de-cision.

Two questions only are presented and contested in this case : 1. If the paper given in evidence as the will of Hans Huddleson, deceased, had been regarded as invalid, either as a deed or will, and been rejected as evidence, does the other proof in the cause show that the lessors of the plaintiff had a ground and right of recovery of three-sevenths of the land in contest ? If not, then they were not prejudiced by the admission and introduction of said paper as evidence, or by the imperative instruction given by the court to the jury. 2. If the plaintiffs have made out, upon the other proof in the cause, sufficient right and title to author-ize a recovery of three-sevenths of the land from the defendant, in the absence of this paper, then is that

right defeated by the paper in question? Or, in other words, is that paper a *valid deed?* If not, is it such a *will,* as is sufficient, under the statute of wills, to pass the title to *real estate?* If it be a good deed, or a sufficient testamentary disposition of real estate, the plaintiff's action must fail; and the circuit court did not err in the peremptory instruction given to the jury, or in refusing a new trial.

The question first stated has been made and argued by the defendants' counsel through abundant caution, in order that his defense may be supported in the event the paper produced by him, in support of his claim, should be rejected as a deed or will; and in such case, it is nevertheless contended that the right of David Huddleson has been perfected by a continued adverse possession of the land in contest for more than twenty years before the institution of this suit; but it is manifest from the proof, that on this ground of adverse possession alone the defense would fail, because Hans Huddleson's death occurred within the twenty years next preceding the service of the notice in this case; and after his death, his widow continued in possession of the land until her death, which was doubtless several years after the death of her husband. And her possession was rightful and not adverse to or inconsistent with the claim of the lessors of the plaintiff, because if Hans Huddleson be regarded as having died intestate, she had a right to hold and occupy the mansion house during her life, which she did, and during which time the defendant lived with her in her family, and did not hold any separate adverse or independent possession of the land until the death of his mother. Therefore, the whole case depends upon the question last above stated.

Is the paper above copied a deed? If not, is it, as a will, sufficiently proved and executed, and established in such manner as to pass the real estate to the devisees therein named?

1. The possession of the widow of land of which her husband died seized, is not adverse to that of the heirs of the husband, though a part of the heirs lived with her on the premises.

STEVENSON, &c.
vs.
HUDDLESON.

2. A writing purporting to be a will, and using the terms *devise* and *bequeath*, though acknowledged before the county court clerk, and recorded as a will—held to be invalid as a deed.

The paper has all the internal evidences and the usual unerring indications by which last wills and testaments, as distinguished from deeds, are characterized. 1. It is expressly stated in the preamble to be the last will and testament of Hans Huddleson. 2. The devises to the wife and son are made by the use of the testamentary expression of "I give and bequeath;" and not by the terms give, grant, and convey, by which deeds are usually distinguished. 3. The paper was not delivered, nor intended to be delivered as a deed in the lifetime of the testator, which delivery is essential to give force and effect to the paper as a deed. 4. It is obvious from the terms used and the provisions made in the instrument, that testator was making and intended to make a *post mortem* disposition of his whole estate, only to take effect after and in the event of his death; and notwithstanding the paper was acknowledged by Hans Huddleson in his lifetime, to the county court clerk of Nicholas county, and recorded in his office, this must be regarded as having been done, for the purpose, in that mode, of creating and preserving testimony of the execution and publication of the paper as a will; and the right and power of the testator at any time during his life to alter, modify, or revoke it, was not impaired thereby, but continued nevertheless in full force.

3. Such paper having been admitted to record without restriction, by the county court duly authorized to receive proof of wills, must be regarded as a valid will, and effectual to pass title to lands.

This paper then not being a deed, has it been established as a will in such manner as to give to it validity and force to pass the real estate of the testator? The paper has obviously been confirmed, established, and ordered to be recorded by the proper court of probate, having full and plenary jurisdiction over the subject, as the last will and testament of the testator; and by the order and judgment thus rendered, the court has adjudged and determined the question, that the paper is a good will, and sufficient to pass the real, as well as personal estate of the testator, which it purports to do on its face. As the judgment of the court establishing the will does it in

general terms, and does not distinguish or define the paper in question as having been established and ordered to record as a mere testamentary disposition of the personal estate of the testator, it must be presumed that it was recorded as an effectual will to pass real estate, and that it was proved as such. Unless the judgment of the county court had specially directed that it should be established and recorded merely as a will passing personal estate only, then it is a conclusive and legal presumption, as the will is established by a general order and judgment, that it was so done for the purpose of giving to it force and effect to pass both real and personal estate, if both are disposed of by the paper itself. In other words, upon a general judgment of the county court establishing a will, it must of course be presumed that it was established as valid, to pass all the estate, real or personal, which it purports or designs to pass; and such paper cannot be questioned collaterally in other courts, and its force and effect be abridged or limited.

4. A general judgment of the county court admitting a paper to record as a will, is effectual to establish the paper as the will of the testator, and to pass all the estate, real and personal, which it purports to pass.

If the county court order does not establish the paper as a will passing personalty only, and does not so limit and define it, and direct it to be recorded for such purpose alone, then no other court collaterally would have the power so to limit the operation of a will, intending and purporting to pass the testator's real estate. For if it was designed by the probate court that a document purporting to be a will passing real estate, should be so restricted in its operation as to pass only personal estate, it would and should be so signified and directed in the order.

This paper then has been (whether erroneously or not, is not now in this proceeding a legitimate inquiry,) established by the order and judgment of the Nicholas county court, whose power and jurisdiction for the purpose is unquestioned, and whose order is in full force and unreversed, what right then could the circuit court have to reject this will as evidence in this action of ejectment, or to limit its effect and ope-

STEVENSON, &c.
*vs.*
HUDDLESON.

ration to pass the real estate of testator? The will having been established and recorded by the proper court, and the order of that court being in full force and unreversed, its judgment is conclusive upon other courts, where the will may be introduced collaterally as evidence of title in suits for property, upon the principle that it must be presumed that the judgment of a court having jurisdiction over the subject is correctly rendered, unless it be reversed for error; and because a judgment of a court must necessarily, if it has jurisdiction, be binding and effective until it shall, in some recognized legal mode, be set aside or reversed; otherwise, if other tribunals could collaterally disregard such judgments or limit or restrict their effect and operation, it would be a vain thing and solemn mockery to render them.

5. Though a will which purports to pass land does not appear to have been attested by two witnesses, yet if the record of its proof merely states that it was proved, without giving the evidence, the legal presumption is that it was established by proof that it was wholly in the handwriting of the testator. (10 *B. Monroe*, 427; 4 *Bibb*, 439; 2 *A. K. Marshall*, 467, 230.)

But it is contended that the order of the county court in this case is void, and that it had no power to render it, because it appears, upon inspection of the will itself, that it was not acknowledged before two subscribing witnesses, subscribing the paper as such in the presence of the testator, and that, therefore, inasmuch as the will and certificate of probate when taken together, show clearly that the will was not executed in conformity with the provisions of the statute of wills, (2 *Statute Law*, 1538,) which requires an attestation by two subscribing witnesses, the court had no authority or power, by law, to establish this paper as a will, and that the order of the court is therefore void and may be disregarded. It is true, that it appears from the inspection of the paper filed, that no witnesses did subscribe the will in the testator's presence, or at any time; and it is likewise true, that therefore it cannot be presumed that the witnesses, upon whose evidence the will was established, did prove falsely before the court that the will was attested as required by two witnesses; and if there was no other legal mode of executing and publishing a valid will than by acknowledgment before, and the attestation by, two subscribing witnesses, it might not be

a legitimate presumption that the witnesses did prove, what appears from inspection to be manifestly false, that the will was so executed, and consequently, in such case, the inference would be that the witnesses, as they could not truthfully, that they did not prove at all the facts necessary to be proved to authorize the county court to establish the will in question.

But the statute further provides another mode by which valid wills, passing real estate, may be made; and if such wills are wholly in the handwriting of the testator, they must be established and recorded by the county court, upon such proof of the fact as is satisfactory to that court. The certificate of probate in this case does not set forth the evidence given by the witnesses examined, or the purport or substance of their testimony. It merely sets forth the fact that two witnesses were examined upon the subject, and that upon their statements the court determined to establish the will, which was done. The doctrine is well settled, that where the certificate of probate does not purport to set out the evidence specially and in full, upon which the judgment of the court is founded, but where it merely states generally that the will was proved by one or more witnesses, or that the court had examined one or more witnesses touching the question of the execution and publication of the will, if the will is established the order of the court is conclusive and binding until reversed; because it must be presumed that the witness or witnesses did prove every fact which is necessary to exist and to be proven, to authorize the establishment of the will, and to show that it had been executed in conformity to the requisition of the statute of wills. (*See* 10 *B. Monroe*, 427, and cases there cited; *Rowland* v. *McGee*, 4 *Bibb*, 439; *Harper* v. *Wilson*, 2 *A. K. Marshall*, 467; *Lindsey's heirs* v. *McCormick*, 2 *A. K. Marshall*, 230.)

It is true the wills in question, in the cases above referred to, each purported to be attested by two subscribing witnesses, and the doctrine as applicable to those cases as settled by the court is, that as the wills

were established, and although the certificates of probate in those cases stated merely that they were proved according to law, it must be presumed the witnesses stated enough to show that the wills were executed as they *purported* to be.

Here the will in question does not purport to be attested by any subscribing witness; but it is a good will if it was not so attested, provided it be wholly written and signed by the testator himself; it does not appear upon its face that it was written by any other person than the testator himself; it does not appear from the face of the will or the certificate of probate that the testator did not write the whole of the will and sign it himself. If he did though there be no attesting witnesses the will was properly established. It was established by the proper court, and no other tribunal has a right colláterally to pronounce their judgment to be void, or even erroneous, when it does not appear from the will itself, or the certificate of probate, that it was unauthorized by law; or, in other words, when it does not so appear, that the will was written by any other person than the testator himself.

If a will, showing on its face the names of two persons written upon it as attesting witnesses, may be established upon the testimony of one witness; and if, in such case, the will is to be accredited in other tribunals, although the certificate of probate does not show what facts were stated by the witness, on the ground that it must be presumed in favor of the action of the court of probate, that every thing necessary to be shown was proven by the only witness introduced ; then it would seem to follow, that a will having no subscribing witness to it whatever, should be also accredited when established by a county court, although the certificate of probate shows only that it was so done, upon the testimony of the witnesses, whose statements are not given, and because, in such instance, a like presumption would exist that the will was wholly in the handwriting of the testator, the contrary not ap-

pearing from the face of the will or the certificate, and such presumption is as reasonable and as conclusive in the one case as the other. The law prescribes the mode by which the judgments of the county courts establishing or rejecting last wills and testaments may, by appeal, writ of error, or suit in chancery, be revised and reversed or affirmed by superior tribunals; and until such judgments are reversed, they are conclusive upon all parties interested, and cannot, collaterally, be impeached in other courts, unless they are void.

The will in question, of Hans Huddleson, was therefore properly admitted as evidence to show title in the defendant, David Huddleson, to the land in contest; and as the lessors of the plaintiff had no right to recover, the court did not err in instructing the jury, peremptorily, to find for the defendant.

Wherefore the judgment is affirmed.

*Davis,* for appellant; *Reed,* for appellee.